## CIRCUIT COURT OF CAROLINE COUNTY

Morton L. Upshaw

v.

Town of Port Royal
and VEPCO

April 12, 1988

Case No. 86C-71

By JUDGE WILLIAM H. LEDBETTER, JR.

By agreement of the parties, the adjudication of the issues in this chancery suit has been bifurcated, the first step of the litigation being a determination of the width of Back Street between King and Market Streets in the Town of Port Royal. This opinion addresses that question.

The Town of Port Royal was established on the south side of the Rappahannock River "just below Roy's Warehouse" in 1744 and was chartered as an incorporated town by the General Assembly on January 29, 1829. According to old maps, the Town, originally sixty acres, was laid out in an almost perfect grid, all of the lots being of similar dimension and the streets being shown as four poles (66 feet) wide.

In 1949, pursuant to statutory authority and upon formal request by the Town Council, the Virginia Highway Department took the streets of the Town into the State's secondary road system. Back Street from Route 301 to Market Street was included in that network of streets. Since

that time, other streets, or sections of streets, have been taken into the State's secondary road system for construction and maintenance.

Morton L. Upshaw and Rose B. Upshaw reside on Back Street. They own two adjoining parcels, one which they acquired from Robert A. and Nell J. Hicks in 1971 (sometimes referred to as the "Hicks lot"), and the other from Franklin H. Gallahan et al. in 1983 (sometimes referred to as the "Smith Estate lot").

Herbert B. Posner owns and operates a mobile home park to the east of the Upshaws' residence. In 1986, as part of a compromise settlement of a land-use controversy between Posner and the Town, the Town agreed that Posner could develop and operate the mobile home park, under certain conditions, and that the Town would cooperate in Posner's efforts to obtain public utility services for the park.

In compliance with that agreement, the Town's mayor authorized VEPCO to install a pole line "on Town property" along Back Street and to "place [the poles] where they are marked." Consequently, VEPCO constructed an electricity transmission pole line along the south side of Back Street at the location authorized by the Town. Because the line runs across the Upshaws' front yard, this litigation ensued.

The Upshaws claim that the width of Back Street, like all streets in Port Royal, is properly measured by its paved area, or travelled portion, plus a reasonably necessary width on each side for shoulders and drainage. Therefore, they argue, the VEPCO line is on their property.

The Town and VEPCO contend that Back Street is 66 feed wide, as shown on the old Town maps, and that the VEPCO line is within the Town's right-of-way.

The Upshaws instituted this suit by a bill for declaratory judgment on October 20, 1986, asking that the court determine the location of Back Street in relation to their property and that the court appoint condemnation commissioners under Virginia Code § 8.01-187 in the event of a finding that their property has been taken for public use.

The defendant filed responsive pleadings denying that the public right-of-way or the utility line is located on or intrudes upon the Upshaws' property. (The Town also demurred. The demurrer was overruled on March 25, 1987.)

After discovery, the parties requested an ore tenus hearing for the purpose of determining the width of Back Street. A hearing was conducted on January 27, 1988. Counsel filed comprehensive and instructive memoranda on January 27th (the Upshaws), February 17th (VEPCO and the Town), and February 19th (the Upshaws - reply memorandum).

### Source of Title -- Upshaws

#### A. *The Hicks Lot.*

The chain of title of the Hicks Lot is described in Plaintiff's Exhibit # 1, a stipulated exhibit.

As mentioned above, the Upshaws acquired this parcel from Hicks in 1971. In the deed of conveyance, the property is described as "located on Back Street and bounded on the Northeast by Back Street; on the Southeast and Southwest by the land of [Hicks] and by the land of [Smith Estate]". Reference is made to a plat attached to the deed. The plat, made by Joseph W. Alfred, C.L.S., dated April 17, 1971, refers to set markers to establish the property's frontage on Back Street but bears the following disclaimer: "Back St. R/W Not Estab."

The plaintiffs' exhibit traces title of the Hicks lot to 1859. None of the instruments through which the Upshaws claim title sheds much light on the central issue, i.e., the location of the property line as it relates to Back Street.

#### B. *The Smith Estate Lot.*

The chain of title of the Smith Estate Lot is described in Plaintiff's Exhibit # 2, a stipulated exhibit.

The Upshaws acquired title to this parcel from the executors and heirs of the Estate of Elizabeth Ruffin Smith in 1983. The deed describes the parcel as "approximately one-half acre," fronting on the southwest side of Back Street "and bounded on the north by Back Street, on the south and west by the lands of [Hicks] and on the east by the lands of [Upshaw]." The deed makes reference to a 1906 "map of the Town of Port Royal." (A correction deed, recorded in June of 1987, after the VEPCO lines were installed, eliminates all reference to the 1906 plat.)

The exhibit traces title of this lot to 1845. In that year, George Fitzhugh acquired several numbered lots, each containing one-half acre, as "designated and known in Plat of said Town." Apparently, the parties agree that the lot described as Lot 75 in that deed is the subject property.

### Source of Title -- Town of Port Royal

The Town of Port Royal traces title to its streets to an old plat which it contends is an accurate copy of the original plat of the Town. See Plaintiff's Exhibit # 6, admitted by stipulation. The plat was recorded in the Clerk's Office on April 13, 1909. A notation on the plat states that all of the accompanying text is taken from an 1849 copy of the original "Plat of Port Royal." According to the text on the plat, the land was surveyed by Ro. Brooke on October 19, 1743, as a "plan of sixty acres of land," with each lot ten poles long and eight poles broad, and streets four poles (66 feet) broad.

The Town also relies on a "Map of Port Royal" prepared by T. T. Arnold in 1906 and recorded on April 13, 1909. The surveyor's notes indicate that he "re-aligned the streets and squares" of the Town at the request of the Town Council. The plat refers to Back Street as "one chain wide." A chain equals 66 feet.

In 1949, the Town Council passed a resolution requesting that the Virginia Department of Highways (now VDOT) take over the streets of the Town. The resolution declared that all streets have a width of 60 feet.

### The Issue to be Resolved

In their bill, the Upshaws assert that the purpose of the suit is to determine "the correct location of an alleged right-of-way abutting [the Upshaws'] property at the northwest intersection of Back Street and Market Street in the Town of Port Royal, Virginia."

However, in their memorandum, they adopt a more sweeping approach, arguing that "the ramifications of this court's decision extend beyond the present case," and calling upon the court, at least implicitly, to determine the present width of all streets in Port Royal.

It is the responsibility of the judiciary, in contrast with the legislature, to resolve disputes within the context of individual cases and controversies properly before the court for adjudication. The judicial decision is based upon the application of legal principles to the evidence presented by the litigants. If it is necessary for the court, especially an appellate court, to reverse precedent, to enunciate new legal principles, or to apply established principles to a novel set of facts, the decision may, of course, have considerable impact beyond the litigants themselves. In this case, however, the court is not asked to break with precedent or to mold or remold legal principles. Instead, this controversy is, at bottom, a factual dispute concerning the location of a boundary line. That is the issue, then, as properly framed in Upshaws' bill. In order to decide that issue, the court is told that it must determine the width of Back Street at the point where the Upshaws' property fronts Back Street.

### Burden of Proof

The Upshaws argue that this is not a boundary line case, at least at this stage.

> If the court rules that the rights of way in Port Royal are 66 feet wide, then the issue will be the location of the Back Street right of way vis-a-vis Plaintiffs' property and the case will be, in essence, a boundary line case.
> The point that Defendants are missing is that if the right of way is the existing street, it does not follow that Plaintiffs' property abuts the right of way . . . .
> The point that Defendants conveniently ignore is that there may be third parties with an interest in property abutting the Back Street right of way. If the Upshaws' predecessors in title owned to the existing street . . . and did not deed their interest to the Upshaws (or others) then they still own the area between the Upshaws' northern boundary line and the street . . . .

This argument is really nothing more than a well-phrased rehash of the previous argument, discussed above, in which the Upshaws implore the court to render a comprehensive ruling fixing the width of all streets in Port Royal, whether the abutting landowners are parties to this suit or whether such landowners even care where the rights-of-way may be located.

It is axiomatic that controversies are to be resolved narrowly, on the evidence presented, having due regard for the specific issue(s) framed in the pleadings. It is also axiomatic that the rights and interests of persons not parties to a suit cannot be adjudicated in that suit with any binding effect upon such persons.

Thus, to reiterate: the court is concerned here with ascertaining the correct boundary line between the Town's right-of-way on Back Street and the Upshaws' property. The court refuses to make determinations regarding the rights and interests of others who may or may not have ownership interests in land along Back Street or any other street in the Town.

On this point, then, the position taken by the Town is correct: this is, in essence, a boundary line dispute between the Upshaws and the Town (and, consequently, VEPCO). The Upshaws claim that the Town (and, consequently, VEPCO) has intruded upon their property because the Town does not own, as it asserts, a 66-foot wide right-of-way along Back Street.

The Upshaws have the burden of establishing their claim. Admittedly, this is not a suit to quiet title, an action of ejectment, or a suit to establish a common boundary line. It is a suit for declaratory judgment, filed pursuant to Virginia Code § 8.01-184 et seq. (There is good reason why the Upshaws proceeded in this fashion. If the court were to determine that they had proven their claim that the Town had taken a portion of their property for the VEPCO power line, Virginia Code § 8.01-187 specifically empowers the court to appoint commissioners to determine compensation for the taking.) However, nothing in the Declaratory Judgment Act suggests that a party may file suit pursuant to those statutes and thereby relieve himself of the burden of proving the claim or right which he asserts. Framing the litigation as a declaratory judgment suit does not shift the ultimate burden of persuasion.

## Decision

The parties stipulate the admissibility of the recorded plat of Port Royal, which purports to be a copy taken in 1849 from the original plat of the Town made by Ro. Brooke in 1743. The Town says that the plat negates the Upshaws' claim; the Upshaws say that the plat cannot be accepted for what the Town says it is, i.e., a reproduction of the original lay-out of the Town, and that it proves nothing.

The instrument is an "ancient document" (i.e., more than thirty years old), is not suspicious on its face, and comes from a place (the Clerk's Office) where such documents would naturally be kept. Thus, the plat qualifies for the "ancient documents authentication rule," which means nothing more or less than that no further authentication is necessary. *See* Friend, The Law of Evidence in Virginia § 186 and § 247 (2d ed. 1983).

The plat is relevant to the issues involved in this litigation. Further, the reproduction recorded in 1909 is admissible as the best evidence of the original, made in 1743, because the parties concede that a diligent search has been made in the place where it is most likely to be (i.e., the Clerk's Office) and cannot be found.

The 1743 plat, copied in longhand in 1849, and reproduced on the paper admitted to the Clerk's Office in 1909, purports to lay out the Town of Port Royal in a grid on the southern bank of the Rappahannock River "just below Roy's Warehouse in St. Mary's Parish in Caroline County . . . ." It subdivides the entire 60-acre tract which became the Town of Port Royal into 84 lots, defines the original outer boundaries of the Town, and sets the dimensions of the lots and the streets. Specifically, it describes the lots as "10 pole long and eight pole broad" and the streets as "four pole" except one, not relevant here, which is "three broad."

Then there is the T. T. Arnold plat, dated August 23, 1906, also recorded on April 13, 1909. The lots, though numbered differently, are essentially the same as on the earlier lay-out, including those lots near the center of the grid reserved for public use. The Arnold plat describes the streets as "1 chain [i.e., 66 feet]

wide except Frederick which is 75 links and Main which is 50 links wide."

The Upshaws correctly point out that if the streets were not originally 66 feet wide, the "realignment" by Arnold in 1909 does not make them 66 feet wide. "Realignment" may have ben a poor choice of words. In any event, the Arnold plat does lend weight to the Town's argument that the Upshaws' evidence is insufficient to establish their claim.

The reliability of the old plat is further evidenced by the testimony of William W. Webb, a licensed surveyor and civil engineer with nine years' experience in Caroline County. Webb has done considerable survey work in Port Royal and, based on his title work in the record room, his field work, and existing "monumentation," he testified that in his opinion the true width of Back Street is that described in the old plat, 66 feet.

Assuming without deciding that the evidence referred to above is not sufficient to establish with any degree of certainty that all streets in Port Royal are 66 feet wide, such evidence does provide a significant counterweight to the Upshaws' contentions.

The Upshaws' evidence is insufficient to establish their contention that the Town and VEPCO are intruding upon their property, or to support their theory that the Town's right-of-way is co-extensive with the paved portion of the existing street plus reasonably necessary shoulders and drainage ditches. Instead, they rely on the weakness of the Town's assertion that all of its streets are either 60 or 66 feet wide.

They take the position, in essence, that the Town has not proven that it owns a 66-foot right-of-way by condemnation, dedication, or any other recognized mode of public acquisition of land, and, therefore, they (the Upshaws) should prevail. Such a position is untenable.

Actually, the evidence shades in the opposite direction. First, the Upshaws' deeds indicate that their property line abutting Back Street is uncertain. Second, no other deeds in their chains of title shed light on the location of that northernmost boundary line. Third, the 1743 Brooke plat and the 1909 Arnold plat indicate that the northern boundary line of the lots along the southern side of Back Street is to be ascertained by reference to a 66-foot-

wide right of way for Back Street, and this is confirmed by Webb's testimony.

Stated differently, beginning with the original lay-out of the Town in 1743, the lots had certain dimensions. Those dimensions were determined by reference to a grid pattern of streets which were laid out to be 66 feet wide. Therefore, the boundaries of the lots are ascertained by the dimensions shown on the plats, referred to time and again in other instruments, including some of those in the Upshaws' chains of title. The dimensions of the lots cannot, with time, become greater than their original dimensions unless the lay-out of the streets was changed or lot owners somehow acquired title to other lots or to the streets bordering the lots. The Upshaws have not shown any such acquisition, and they concede that neither they nor their predecessors could have acquired title by adverse use to the land comprising the streets.

The Upshaws have not established their claim to the property traversed by the utility lines, and, consequently, the court cannot make a decree declaratory of the right which they assert.

### Conclusion

Assuming without deciding that the evidence is insufficient to enable the court to determine that the streets of Port Royal are 66 feet wide, as the Town contends, the Upshaws have not offered sufficient evidence to refute the recorded plats and expert testimony relied upon by the defendants, and, for that reason, have not proven their claim that the Town and VEPCO have intruded upon their property. Accordingly, the relief sought in their bill for declaratory judgment must be denied.